IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                              No. CR 11-3002 JB

ERICK GONZALEZ-LOPEZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed March 22, 2012 (Doc. 30). The Court held a sentencing hearing on April 20, 2012. The primary issues are: (I) whether the Court should depart downward on Defendant Erick Gonzalez-Lopez' offense level under U.S.S.G. § 5H1.1 based on his youth; (ii) whether the Court should depart downward under U.S.S.G. § 5H1.6 based on Gonzalez-Lopez' family ties and responsibilities; (iii) whether the Court should depart downward under U.S.S.G. § 5K2.12 based on Gonzalez-Lopez' coercion and duress; (iv) whether the Court should depart downward under U.S.S.G. § 5K2.20 based on Gonzalez-Lopez' engaging in aberrant behavior; (v) whether the Court should depart downward under U.S.S.G. § 5K2.0 based on the effect the drug war in Mexico has had on Gonzalez-Lopez' life, or based on a combination of factors present; and (vi) whether the Court should vary downward from the advisory guideline range on Gonzalez-Lopez' sentence. The Court will grant in part and deny in part the requests in the Sentencing Memorandum. The Court concludes that a departure under U.S.S.G. § 5H1.1 is not appropriate, because, although Gonzalez-Lopez was young when he committed the offense, his case does not fall outside the heartland of cases. The Court will not depart downward under U.S.S.G. § 5H1.6, given that the effect of Gonzalez-Lopez' incarceration

on his family is not materially different than the heartland of cases.  The Court will not depart downward under U.S.S.G. § 5K2.12, because the level of coercion and duress Gonzalez-Lopez faced is not significant enough to warrant a departure.  The Court will not depart downward under U.S.S.G. § 5K2.20 in light of Gonzalez-Lopez' concession that a departure under this guideline is inappropriate.  The Court will not depart downward under U.S.S.G. § 5K2.0, because the effect of the Mexican drug war on Gonzalez-Lopez does not warrant a departure and because the combination of factors do not warrant a departure.  The Court will vary downward on Gonzalez-Lopez' sentence to a sentence of 15 months given that this sentence best reflects the factors contained in 18 U.S.C. § 3553(a).

## FACTUAL BACKGROUND

Gonzalez-Lopez relates that, "[i]n the month of December, 2004," in Mexico, his "father was murdered over some problems with extortion."  Re-Disclosed Presentence Investigation Report ¶ 15, at 7, disclosed March 20, 2012 ("Re-Disclosed PSR").  His father "owned a car body shop business and a car sales business," and "was being extorted . . . because he had those businesses."  Re-Disclosed PSR ¶ 15, at 7.  There "were two attempts" to kill his father, with Gonzalez-Lopez and his father becoming involved in "a drive by shooting" where Gonzalez-Lopez "was wounded in the incident."  Re-Disclosed PSR ¶ 15, at 7.  During the "second attempt," people "shot into" Gonzalez-Lopez' "home and" his family "couldn't move away because there was no money to move to a different home."  Re-Disclosed PSR ¶ 15, at 7.  He states that his  father "was killed while riding in a car on the street" a few months later.  Re-Disclosed PSR ¶ 15, at 7.  Gonzalez-Lopez tells the following story about his sister:

> Later on, there was the event with my oldest sister.  In 2009, she was a university student, 22 years of age, about to get her law degree.  When my father died, he had an insurance policy that was used to pay for her university expenses.  She was taking

> advantage of that opportunity.  She was in a relationship with her boyfriend and in
> May of 2009, they left on vacation to Culiacan, Sinaloa.  My grandparents lived
> there.  When they arrived there, they were kidnapped and killed.  My sister was
> young, she was clean, didn't have any problems with anyone.  It's just that drug war
> and all the violence is really bad, especially in that part of the country.  It's very
> common to kill, even couples like them and then just dump them in an area trash
> dump.

Re-Disclosed PSR ¶ 15, at 7.  Gonzalez-Lopez was attending "the 11th grade in high school in

Tucson, Arizona," but came back to Mexico to help his mother.  Re-Disclosed PSR ¶ 15, at 7-8.  He

"felt an obligation to help her out since it was just the two of us."  Re-Disclosed PSR ¶ 15, at 8.

> According to the defendant, after the death of his father he attempted to continue
> with his schooling, but became rebellious and his grades suffered.  Following the
> death of his sister, the defendant indicated he had a very difficult time dealing with
> it because they were very close.  However, according to the defendant, he is doing
> well at this time.  It is noted, the defendant did indicate he has difficulties sleeping
> and is on medication.  In addition, the defendant reported he has nightmares that
> somebody is chasing him.

Re-Disclosed PSR ¶ 40, at 13.

"On October 31, 2011, a Border Patrol agent was at the Greyhound Bus Station in

Albuquerque, New Mexico to meet the eastbound bus which makes regular stops in Albuquerque."

Re-Disclosed PSR ¶ 8, at 4.  "The agent was conducting consensual encounters with the passengers

on the bus and made contact with the defendant, identified as Erick Gonzalez-Lopez."  Re-Disclosed

PSR ¶ 8, at 4.  "The agent requested and received permission from Mr. Gonzalez-Lopez to speak

with him."  Re-Disclosed PSR ¶ 8, at 4.  Following a consensual search of his bag, the agent found

"978.6 net grams" of cocaine in Gonzalez-Lopez' bag.  Re-Disclosed PSR ¶ 9, at 4.  Gonzalez-

Lopez "admitted to transporting to Los Angeles and Kansas an additional two kilograms" of

cocaine.  Re-Disclosed PSR ¶ 17, at 9.

Gonzalez-Lopez would get a call on his "cell about once every week" asking him to transport

drugs from individuals he knew in Mexico.  Re-Disclosed PSR ¶ 15, at 6.  He turned them down

several times, but states that delivering drugs "was in the back of my mind because I was earning very little, 800 pesos weekly."  Re-Disclosed PSR ¶ 15, at 6.  He says that this amount "was barely enough to pay for my school expenses, which meant I couldn't help my mom financially."  Re-Disclosed PSR ¶ 15, at 6.  He relates that his mother was making very little money and "was four months behind with her monthly house payments."  Re-Disclosed PSR ¶ 15, at 6.  Before his arrest, the last time he talked to one of the individuals asking him to deliver drugs, the individual said "that [Gonzalez-Lopez] would have to do it one way" or "the other," to which Gonzalez-Lopez responded he would deliver drugs.  Re-Disclosed PSR ¶ 15, at 6.

## PROCEDURAL BACKGROUND

Gonzalez-Lopez, pursuant to a Plea Agreement, filed January 5, 2012 (Doc. 24), pled guilty to the Indictment, filed December 1, 2011 (Doc. 14), charging him with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), that being possession with intent to distribute 500 grams and more of cocaine.  The parties stipulate that "[a]t least 500 grams but less than 2 kilograms of cocaine are attributable to the Defendant," and "agree that the Defendant's base offense level under the sentencing guidelines is 26, pursuant to U.S.S.G. § 2D1.1(c)(7)."  Plea Agreement ¶ 10, at 4.   The parties stipulate that Gonzalez-Lopez "was a minor participant in the criminal activity underlying this agreement" under U.S.S.G. § 3B1.2.  Plea Agreement ¶ 10, at 6.  The parties agree to a 3-level reduction on Gonzalez-Lopez' offense level "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct."  Plea Agreement ¶ 10, at 4-5.  Plaintiff United States of America agrees to recommend a sentence at the low end of the advisory guideline range.  See Plea Agreement ¶ 10, at 6.  Pursuant to the Plea Agreement, Gonzalez-Lopez agrees to waive "the right to appeal the Defendant's conviction(s) and any sentence and fine within or below the applicable advisory guideline range as determined by the Court."  Plea Agreement ¶ 13, at 7.

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Gonzalez-Lopez on March 1, 2012.  On March 20, 2012, the USPO issued a Re-Disclosed PSR to correct some factual errors in the PSR.  In the Re-Disclosed PSR, the USPO calculates Gonzalez-Lopez' total offense level to be 19.  See Re-Disclosed PSR ¶ 24, at 10.  The Re-Disclosed PSR applies a base offense level of 26 pursuant to U.S.S.G. § 2D1.1 and the parties' agreement regarding the amount of drugs attributable to Gonzalez-Lopez.  See PSR ¶ 17, at 9.  The USPO relates that it is more likely that "2978.6 net grams of cocaine" is attributable to Gonzalez-Lopez in light of his admission that he transported "to Los Angeles and Kansas an additional two kilograms" of cocaine.  PSR ¶ 17, at 9.  The USPO related that a base offense level of 28 may be more appropriate.  See PSR ¶ 17, at 9.  In light of the parties' stipulation regarding the amount of drugs, the PSR nonetheless applies an offense level of 26.  See PSR ¶ 17, at 9.  The Re-Disclosed PSR applies a 2-level reduction under U.S.S.G. § 2D1.1(b)(16) and the applicable safety-valve provisions.  See Re-Disclosed PSR ¶ 18, at 9.  The Re-Disclosed PSR includes a 2-level reduction for a minor role under U.S.S.G. § 3B1.2(a), because "it appears the defendant was acting as a courier."  Re-Disclosed PSR ¶ 20, at 9.  The Re-Disclosed PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Gonzalez-Lopez ' acceptance of responsibility.  See Re-Disclosed PSR ¶ 23, at 10.  The Re-Disclosed PSR lists his criminal history category as I, based on 0 criminal history points.  See Re-Disclosed PSR ¶ 27, at 10.  The Re-Disclosed PSR calculates that an offense level of 19 and a criminal history category of I results in a guideline imprisonment range of 30 to 37 months.  See PSR ¶ 56, at 15.

On March 22, 2012, Gonzalez-Lopez filed his Sentencing Memorandum.  See Doc. 30.  He requests departures under five different guidelines: (I) U.S.S.G. § 5H1.1; (ii) U.S.S.G. § 5H1.6; (iii) U.S.S.G. § 5K2.12; (iv) U.S.S.G. § 5K2.20; and (v) U.S.S.G. § 5K2.0.  See Sentencing

Memorandum at 1.  He relates that he "and his family have been affected by violence for a very long time."  Sentencing Memorandum at 3.  Gonzalez-Lopez asserts that his father's murder "destroyed the family" and "plunge[d] them into poverty."  Sentencing Memorandum at 4.  He states that, when he returned to Mexico to help his mother, "he started hanging out with some unsavory friends." Sentencing Memorandum at 6.  Gonzalez-Lopez contends that one of those individuals "would call him and text him at all hours" to try to have him deliver drugs.  Sentencing Memorandum at 6.  He argues that his incarceration will have an adverse impact on his family.  <u>See</u> Sentencing Memorandum at 7-8.  He represents that "[t]he issue here is not that the Gonzalez Lopez family relies upon" him "for its livelihood," but that "it has been devastated so by violence and tragedy that it would be harder on them than even for the usual family to have their youngest brother/child incarcerated."  Sentencing Memorandum at 9.  Gonzalez-Lopez argues that the "offense occurred when he was barely eighteen years old" and asserts that "his judgment was underdeveloped." Sentencing Memorandum at 9.  He asserts that U.S.S.G. § 5H1.1 accounts for the effects age may have on a defendant's relative culpability.  <u>See</u> Sentencing Memorandum at 9-10.  He further asserts that a departure is warranted under U.S.S.G. § 5K2.12 given that he has faced so much pressure to deliver drugs because of the "incredibly dangerous situation in Mexico due to drug traffickers." Sentencing Memorandum at 12-13.  He notes that he has faced some level of duress to deliver drugs. <u>See</u> Sentencing Memorandum at 13-14.  He contends that a departure is warranted under U.S.S.G. § 5K2.20(b) in light of the isolated nature of his criminal activity.  <u>See</u> Sentencing Memorandum at 14-15.  He also contends that a departure under U.S.S.G. § 5K2.0 is appropriate in light of: (I) the level of violence in Mexico; and (ii) the combination of factors present.  <u>See</u> Sentencing Memorandum at 15-16.  He contends that a sentence equivalent to one if he had an offense "level 14 of fifteen months would be sufficient" in this case.  Sentencing Memorandum at 18, 20.

On March 29, 2012, the United States filed its United States' Response to Defendant's Sentencing Memorandum.  See Doc. 32 ("Response").  It represents that there is little evidence that Gonzalez-Lopez's family relies "on him for their livelihood."  Response at 2.  It contends that U.S.S.G. § 5H1.6 requires that "[t]he loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant."  Response at 2 (alteration in original).  The United States contends that, while Gonzalez-Lopez was eighteen-years old when he committed the federal drug trafficking offense, "[h]e was not a juvenile."  Response at 3.  The United States asserts that Gonzalez-Lopez "fails to show any evidence of actual threats made" that would support a departure under U.S.S.G. § 5K2.12.  Response at 3-4.  The United States contends that a departure under U.S.S.G. § 5K2.20 is not appropriate, because Gonzalez-Lopez "admits to possessing cocaine with intent to distribute . . . on two prior occasions."  Response at 4-5. It also asserts that a departure is not appropriate under U.S.S.G. § 5K2.20, because this guideline does not permit a court to "consider a downward departure . . . for a serious drug trafficking offense."  Response at 5.  The United States contends that a sentence of 30 months is appropriate. See Response at 6.  On April 6, 2012, Gonzalez-Lopez filed his Reply to Response to Sentencing Memorandum.  See Doc. 33.

At the sentencing hearing on April 20, 2012, the parties agreed to the Court reducing Gonzalez-Lopez' offense level a third level for acceptance of responsibility.  See Transcript of Hearing at 3:23-4:9 (taken April 20, 2012)(Court, Henderson, Converse)("Tr.").[1]  The Court expressed concern about the weight of the drugs attributed to Gonzalez-Lopez.  See Tr. at 4:10-14 (Court).  Gonzalez-Lopez stated that he made admissions regarding transporting drugs on other

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

instances while he was nervous and in response to aggressive questioning.  See Tr. at 4:15-23 (Converse).  He also stated that the evidence is not clear that he made a total of three trips.  See Tr. at 5:4-15 (Converse).  The United States related that it was not prepared to present evidence establishing by a preponderance of the evidence that approximately 2.9 kilograms of cocaine is attributable to Gonzalez-Lopez.  See Tr. at 6:20-7:12 (Henderson, Court).  The Court then denied Gonzalez-Lopez' request for a departure under U.S.S.G. § 5H1.1 given that it did not find that Gonzalez-Lopez' case falls outside the heartland of cases regarding his age.  See Tr. at 11:12-12:9 (Court).  Gonzalez-Lopez argued that he has done many things to take care of his mother and his other family members would suffer if the Court incarcerates him to a lengthy period of imprisonment.  See Tr. at 13:4-14:7 (Converse).  The United States related that almost every defendant has family who suffer from their incarceration.  See Tr. at 14:9-20 (Henderson).  The Court acknowledged that Gonzalez-Lopez' family would likely suffer if he is incarcerated, but it did not find the circumstances such that a departure was warranted under U.S.S.G. § 5H1.6.  See Tr. at 15:2-16:2 (Court).  Gonzalez-Lopez conceded that a departure under U.S.S.G. § 5K2.20 was not appropriate in light of his commission of a serious drug offense.  See Tr. at 16:7-11 (Converse).  The Court stated that, while there appeared to be some pressure on Gonzalez-Lopez to transport drugs, it did not find that a departure under U.S.S.G. § 5K2.12 to be appropriate under the circumstances. See Tr. at 20:18-21:20 (Court).  Gonzalez-Lopez requested that the Court vary downward to an offense level of 14 and a sentence of 15 months.  See Tr. at 22:2-7 (Converse).

## LAW REGARDING DOWNWARD DEPARTURES

The guidelines "place essentially no limit on the number of potential factors that may warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996).  See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors

which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").  A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."  Koon v. United States, 518 U.S. at 92.  Accord United States v. Lewellen, No. 11-1524, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.  We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

## LAW REGARDING U.S.S.G. § 5H1.6

U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.  The application note to this guideline recognizes that a court should consider the following factors when deciding whether to grant a departure under this guideline:

(A)   In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:

    (I)   The seriousness of the offense.

    (ii)   The involvement in the offense, if any, of members of the defendant's family.

    (iii)   The danger, if any, to members of the defendant's family as a result of the offense.

(B)   . . . A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in

subdivision (A), the presence of the following circumstances:

(I)     The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii)    The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.  For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii)   The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv)    The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 cmt. n.1.  "A district court may also rely on the existence of family ties and responsibilities in varying downward on a defendant's sentence."  United States v. Justice, No. 09-3078, 2012 WL 394455, at *7 (D.N.M. Jan. 23, 2012)(Browning, J.)(citing United States v. Munoz-Nava, 524 F.3d 1137, 1148 (10th Cir. 2008)).

## LAW REGARDING U.S.S.G. § 5K2.12

U.S.S.G. § 5K2.12 provides:

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.  The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.  Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.  Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant

a downward departure.

U.S.S.G. § 5K2.12.  Courts should not, as a general rule, depart under this guideline on the basis of financial or economic coercion or duress.  See United States v. Contreras, 180 F.3d 1204, 1211 (10th Cir. 1999).  Moreover, purely emotional coercion is insufficient to warrant a departure.  See United States v. Contreras, 180 F.3d at 1211-12.  "To justify a departure, the alleged coercion must have caused the defendant to commit the criminal act."  United States v. Gallegos, 129 F.3d 1140, 1145 (10th Cir. 1997).  In determining whether to depart under § 5K2.12, a court may also consider whether the defendant had "a reasonable belief of a current and imminent threat."  United States v. Burks, 490 F.3d 563, 566 (7th Cir. 2007).  In making its findings regarding a motion for a downward departure under § 5K2.12, a court may hold an evidentiary hearing, see United States v. Enlow, No. 06-2364 JB, 2007 WL 5231706, at *2-3 (D.N.M. Aug. 23, 2007)(Browning, J.)(holding an evidentiary hearing at the defendant's request), but is not required to do so, see United States v. Tucker, 298 F.App'x 794, 799 (10th Cir. 2008)(unpublished)(rejecting an argument that the defendant's counsel was ineffective for failing to request an evidentiary hearing on a § 5K2.12 motion, because "the district court retains broad discretion regarding evidentiary hearings" and because the defendant cited no authority making it an error not to request one); Vigil v. Zavaras, 298 F.3d 935, 943 (10th Cir. 2002)("Generally, the decision to hold an evidentiary hearing is vested in the broad discretion of the district courts, and is reviewed only for an abuse of discretion.")(alterations omitted)(internal quotation marks omitted)).

## LAW REGARDING U.S.S.G. § 5K2.20

"U.S.S.G. § 5K2.20 . . . authorizes a departure for aberrant conduct."  United States v. Hernandez, No. 03-2451, 2008 WL 4820800, at *7 (D.N.M. June 30, 2008)(Browning, J.)(citing U.S.S.G. § 5K2.20).  U.S.S.G. § 5K2.20(b) provides: "The court may depart downward under this

policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b).  U.S.S.G. § 5K2.20© recognizes that a "court may not depart downward pursuant to this policy statement if . . . . the instant offense of conviction is a serious drug trafficking crime." U.S.S.G. § 5K2.20©.  Application note 2 to U.S.S.G. § 5K2.20 states that a "'[s]erious drug trafficking offense' means any controlled substance offense under title 21, United States Code other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater."  U.S.S.G. § 5K2.20 cmt. n.2.

## ANALYSIS

There being no disputes about the PSR's factual findings, the Court adopts them as its own. The Court concludes that a departure under U.S.S.G. § 5H1.1 is not appropriate, because, although Gonzalez-Lopez was young when he committed the offense, his case does not fall outside the heartland of cases.  The Court will not depart downward under U.S.S.G. § 5H1.6 given that the effect of Gonzalez-Lopez' incarceration on his family is not materially different than the heartland of cases.  The Court will not depart downward under U.S.S.G. § 5K2.12, because the level of coercion and duress that Gonzalez-Lopez faced is not significant enough to warrant a departure.  The Court will not depart downward under U.S.S.G. § 5K2.20 in light of Gonzalez-Lopez' concession that a departure under this guideline is inappropriate.  The Court will not depart downward under U.S.S.G. § 5K2.0, because the effect of the Mexican drug war on Gonzalez-Lopez does not warrant a departure and because the combination of factors do not warrant a departure.  The Court will vary downward on Gonzalez-Lopez' sentence to a sentence of 15 months given that this sentence best reflects the factors contained in 18 U.S.C. § 3553(a).

-12-

I.      **THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5H1.1 BASED ON GONZALEZ-LOPEZ' YOUTH.**

U.S.S.G. § 5H1.1 provides in relevant part:

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

U.S.S.G. § 5H1.1. The Court acknowledges that this guideline permits a downward departure based on a defendant's youth. Nevertheless, a departure under this guideline may often be easier to justify for older defendants who will have a lower rate of recidivism and who may be too physically feeble to commit more crimes. The circumstances surrounding Gonzalez-Lopez' youth are not such that they fall outside the heartland of cases. The Court sees many young defendants who appear before it and acknowledges that younger people are more likely to commit crimes than older individuals. Our prisons, unfortunately, contain many young men who have made mistakes, including mistakes far more serious than those Gonzalez-Lopez' has made. Ultimately, the Court is having trouble distinguishing Gonzalez-Lopez' case from that of the many young defendants who appear in federal court nationwide and in this district. While the Court acknowledges that a departure is authorized under this guideline, the Court does not believe one is warranted in this case. Even if a departure were warranted, the Court would exercise its discretion not to depart.

II.     **THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5H1.6 BASED ON GONZALEZ-LOPEZ' FAMILY CIRCUMSTANCES.**

U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Gonzalez-Lopez has argued that his incarceration will have an adverse impact on his mother's financial circumstances

and will cause severe hardship to his family in light of their troubled past.

The application note to this guideline recognizes that a court should consider the following factors when deciding whether to grant a departure under this guideline based on the loss of caretaking or support to the defendant's family:

(A)     In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:

(I)     The seriousness of the offense.

(ii)    The involvement in the offense, if any, of members of the defendant's family.

(iii)   The danger, if any, to members of the defendant's family as a result of the offense.

(B)     . . . A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:

(I)     The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii)    The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.  For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii)   The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv)    The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 cmt. n.1.  As to the first three factors under this application note, first, Gonzalez-

Lopez has committed a serious offense.  He has committed a major drug crime involving close to a kilogram of cocaine.  Second, none of his family members were involved in the offense.  Third, he placed none of his family members in danger when he committed this offense.

As to the remaining four factors under this application note, first, Gonzalez-Lopez has not shown a substantial, direct, and specific loss of essential caretaking, or essential financial support, to his mother.  The Court acknowledges that it is more difficult for family members to make a living when one of the income earners faces incarceration.  Nevertheless, nothing about Gonzalez-Lopez' mother's circumstances is atypical.  Second, the Court cannot say that the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.  The Court sentences to incarceration many defendants whose families suffer significant harm from their imprisonment.  It is one of the difficult realities of the criminal justice system.  The Court does not see anything that takes this case out of the heartland of cases.  Third, Gonzalez-Lopez has not demonstrated that the loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available.  It does not appear that he was earning a large income in Mexico, and it appears that Gonzalez-Lopez has other family members who can provide some support to his mother if necessary.  Fourth, it is not clear that the departure effectively will address the loss of caretaking or financial support.  Gonzalez-Lopez asserts that he wishes to "continue [his] education in Tucson" upon his release.  Re-Disclosed PSR ¶ 15, at 8.  It is unclear that he would be earning any significant income while in school that would help his mother.  The Court is not faulting Gonzalez-Lopez for pursuing an education, but it remains unclear that departing downward would aid his mother financially.  Thus, a departure on the basis that Gonzalez-Lopez' mother would lose a source of financial support is not warranted.  Even if a departure were warranted, the Court would exercise its discretion not to depart.

Regarding the overall impact of his incarceration on his family, the Court acknowledges that Gonzalez-Lopez has a troubled past.  Both his father and sister were brutally murdered.  The Court does not downplay the significance of those events.  Nevertheless, Gonzalez-Lopez is not facing such a significant period of incarceration that the Court believes that incarcerating him will cause undue hardship to his family.  Additionally, incarceration of a family member is a common, and unfortunately unavoidable, event in the criminal justice system.  It is never a positive thing when incarceration causes damage to a family.  The general notion that Gonzalez-Lopez has suffered tragedy in the past, however, does not warrant a departure.  Even if a departure were warranted, the Court would exercise its discretion not to depart.

## III.   THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5K2.12 BASED ON ANY COERCION OR DURESS GONZALEZ-LOPEZ FACED.

U.S.S.G. § 5K2.12 provides:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.  The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.  Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.  Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

U.S.S.G. § 5K2.12.  "To justify a departure, the alleged coercion [or duress] must have caused the defendant to commit the criminal act."  United States v. Gallegos, 129 F.3d at 1145.  In determining whether to depart under § 5K2.12, a court may also consider whether the defendant had "a reasonable belief of a current and imminent threat."  United States v. Burks, 490 F.3d at 566.

The Court acknowledges that Gonzalez-Lopez faced some level of pressure from individuals

-16-

in Mexico to participate in the drug trade.  Unfortunately, his case is not a unique one.  Many young

individuals face pressure from those involved in the drug trade, both in the United States and in

Mexico, to play a role.  Some even face threats of violence.  Furthermore, the level of pressure he

faced is not so significant that it would take his case outside of the heartland of cases.  The threats

are not so severe that Gonzalez-Lopez appears to have had no other options.  He also voluntarily

placed himself in these individuals' company.  It also appears that Gonzalez-Lopez succumbed to

some financial pressure to care for his mother.  In other words, there were also some economic

pressures that caused him to commit the crimes.  The Court is not downplaying the tough

circumstances Gonzalez-Lopez has faced.  Nevertheless, the Court does not believe that they

warrant a downward departure.  Even if a departure were warranted, the Court would exercise its

discretion not to depart.

## IV.   THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5K2.20 BASED ON ABERRANT BEHAVIOR.

U.S.S.G. § 5K2.20(b) provides: "The court may depart downward under this policy statement

only if the defendant committed a single criminal occurrence or single criminal transaction that

(1) was committed without significant planning; (2) was of limited duration; and (3) represents a

marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20(b).

U.S.S.G. § 5K2.20© recognizes that a "court may not depart downward pursuant to this policy

statement if . . . . the instant offense of conviction is a serious drug trafficking crime."  U.S.S.G. §

5K2.20©.  Application note 2 to U.S.S.G. § 5K2.20 states that a "'[s]erious drug trafficking offense'

means any controlled substance offense under title 21, United States Code other than simple

possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment

of five years or greater."  U.S.S.G. § 5K2.20 cmt. n.2.

A departure is not permissible under U.S.S.G. § 5K2.20©, because Gonzalez-Lopez has pled guilty to a serious drug trafficking offense.  21 U.S.C. § 841(b)(1)(B) carries with it a mandatory minimum sentence of five years.  <u>See</u> 21 U.S.C. § 841(b)(1)(B) (prescribing "a term of imprisonment which may not be less than 5 years" when the defendant has "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine").  Application note 2 to U.S.S.G. § 5K2.20 states that a "'[s]erious drug trafficking offense' means any controlled substance offense under title 21, United States Code other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater."  U.S.S.G. § 5K2.20 cmt. n.2.  Gonzalez-Lopez conceded this issue at the hearing.  <u>See</u> Tr. at 16:7-11 (Converse).  Thus, a departure under this guideline is not permitted.  Moreover, even if the departure were authorized, the Court does not believe a departure is warranted under the circumstances. Gonzalez-Lopez has admitted to engaging in similar activity on two previous occasions.  <u>See</u> Re-Disclosed PSR ¶ 17, at 9.  Finally, even if a departure were warranted, the Court would exercise its discretion not to depart.  The crime was not one committed in the heat of passion or otherwise consistent with conduct that would constitute aberrant behavior.

## V.   THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5K2.0 BASED ON A COMBINATION OF FACTORS PRESENT IN THE CASE.

U.S.S.G. § 5K2.0(a)(2)(B) provides: "A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."  U.S.S.G. § 5K2.0(a)(2)(B). In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent."  <u>Koon v. United States</u>, 518 U.S. at 95-96.  Although such departures under U.S.S.G. § 5K2.0 may be infrequent, unusual circumstances may be sufficiently extraordinary that they are

accepted as a basis for departure and thereby become relevant to sentencing.  See <u>Koon v. United States</u>, 518 U.S. at 95-96.  The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011).  U.S.S.G. § 5K2.0© provides:

> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if--
>
> > (1)    such offender characteristics or other circumstances, taken together, make the case an exceptional one; and
> >
> > (2)    each such offender characteristic or other circumstance is--
> >
> > > (A)    present to a substantial degree; and
> > >
> > > (B)    identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

U.S.S.G. § 5K2.0©.

The Court acknowledges that the drug war in Mexico has a great deal of collateral consequences on both Mexican citizens and those who live near Mexico's borders.  The Court sees many of the consequences here in the form of a full docket of border-related cases.  The Court understands that the situation in Mexico is one that causes hardships to many and destroys some families.  The Court concludes that arguments of this nature, however, are more suited to an argument for a downward variance than an argument for a downward departure.  In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent."  <u>Koon v. United States</u>, 518 U.S. at 95-96.  A court has more flexibility under the factors listed in 18 U.S.C.

§ 3553(a) to consider such arguments than it does under the guidelines.  Furthermore, the Court cannot say that, in light of the high volume of border-related cases it sees that have some relation to the Mexican drug war, that Gonzalez-Lopez' case falls outside the heartland of cases the federal courts and this district see.  Thus, a downward departure is not warranted.  Even if a downward departure were warranted, the Court would exercise its discretion not to depart.  The court prefers to account for such factors through a variance rather than the rather blunt instrument of a downward departure.

Furthermore, even when considering all the circumstances in the case, the Court does not consider that a departure under U.S.S.G. § 5K2.0© is warranted.  Gonzalez-Lopez fits the typical profile of cases involving young defendants that the Court sees.  They are impulsive, make a bad decision, and end up facing a term of incarceration that causes their family to suffer.  While Gonzalez-Lopez has no criminal history, that is relatively common for defendants his age who commit their first crime.  Furthermore, he has admitted to transporting drugs on more than one occasion.  Thus, a downward departure is not warranted.  Even if a downward departure were warranted, the Court would exercise its discretion not to depart.

## VI.    THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 15-MONTHS IMPRISONMENT.

There being no disputes about the Re-Disclosed PSR's guideline calculation, the Court adopts that calculation as its own.  An criminal offense level of 19 and a criminal history category of I results in a guideline imprisonment range of 30 to 37 months.  Although there is a mandatory minimum of five years for Gonzalez-Lopez' offense, see 21 U.S.C. § 841(b)(1)(B) (prescribing "a term of imprisonment which may not be less than 5 years" when the defendant has "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine"), 18 U.S.C. § 3553(f)

-20-

authorizes a sentence below the statutory minimum, see 18 U.S.C. § 3553(f).

Gonzalez-Lopez possessed with intent to distribute 978.6 grams of cocaine base. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Gonzalez-Lopez' offense. The Court concludes that a sentence of 15 months is sufficient to reflect the seriousness of this offense. The Court has identified a variety of factors that counsel in favor of a variance, including that: (I) Gonzalez-Lopez is eighteen-years old and does not have the maturity of an older individual; (ii) he has no criminal history; (iii) he has some incredibly tragic family circumstances; (iv) he felt that he was in a vulnerable position and had to take care of his mother; (v) he felt pressure from other individuals to sell drugs; (vi) he is a low-level courier in terms of drug trafficking; (vii) sentencing him to too long a period of incarceration could harden him in prison; (viii) he does not appear to have as high a likelihood of recidivism as many defendants the Court sees; and (ix) he had relatively little control over his situation while he was in Mexico. The Court has also identified several factors that do not counsel in favor of a variance, including that: (I) he is young, so he does not have many people depending on him for support; (ii) the Court has identified some issues regarding the weight of the drugs attributable to him; (iii) he is a United States citizen, so he will not face the same hardships as a non-citizen if convicted -- such as deportation; and (iv) the offense involved cocaine, which is a serious drug. In light of the factors present in this case, a variance equivalent to a reduction of 5 offense levels is appropriate. A criminal offense level of 14 and a criminal history category of I yields a guideline imprisonment range of 15 to 21 months.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into

account not only the guidelines but other sentencing goals.  The Court believes that a sentence of 15 months is appropriate to reflect the seriousness of Gonzalez-Lopez's crime.  The Court sees many defendants with troubled pasts, but Gonzalez-Lopez' is more troubling than most.  His father and sister were both murdered while he was young.  These events have caused him some significant mental and emotional trauma.  Gonzalez-Lopez came back to Mexico from the United States to help out his mother in light of her financial circumstances.  He eventually became involved in the drug trade in part because of financial pressures and pressures from those with whom he began to interact. He ultimately made an unwise decision to decide to transport drugs.  That he made a poor decision does not excuse his criminal conduct, but his circumstances weigh in the Court's mind in its determination regarding the appropriate sentence for him.

This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the offense is a serious one, Gonzalez-Lopez was a relatively minor player in drug trafficking.  In light of some of the mitigating circumstances in Gonzalez-Lopez' case that are not present in the cases of many other defendants, the Court concludes that the sentence promotes respect for the law and provides just punishment.  Because Gonzalez-Lopez now has a serious felony conviction on his record, the sentence provides adequate deterrence to both him and to the public at large.  Given his lack of prior criminal history and the non-violent nature of the crime, the Court concludes that the sentence adequately protects the public. In light of the application of 18 U.S.C. § 3553(f), which permits a sentence below the mandatory minimum, the Court does not believe that the sentence promotes unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at

a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a),

see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not

to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence

sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)."

(citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important

in this calculation, the Court believes that this sentence is sufficient without being greater than

necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform

Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18

U.S.C.).  The Court sentences Gonzalez-Lopez to 15-months imprisonment.[2]

---

[2]When drafting this memorandum opinion and order, the Court noticed a potential argument that it may not have authority to vary from the advisory guideline range in the context of a sentence below a mandatory minimum otherwise permitted under 18 U.S.C. § 3553(f).  No party raised any such argument at the sentencing hearing or in their briefing.  In United States v. Bugarin, 312 F.App'x 147 (10th Cir. 2009)(unpublished), the United States Court of Appeals for the Tenth Circuit stated the following: "Although we requested supplemental briefing on the issue, we need not decide whether a district court has authority to vary from a within-Guidelines sentence when safety valve relief applies under 18 U.S.C. § 3553(f) because the district court in this case did not vary."  312 F.App'x at 152 n.6.  The relevant portion of 18 U.S.C. § 3553(f) that likely raised this concern for the Tenth Circuit is as follows:

> Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that [the safety-valve provisions apply].

18 U.S.C. § 3553(f) (emphasis added).  Based on that language, it may be that a district court does not have the authority, in a case involving 18 U.S.C. § 3553(f), to vary downward beyond the applicable advisory guideline range.  Cf. United States v. Cousins, 455 F.3d 1116, 1123 (10th Cir. 2006)("If the district court makes these five findings [under 18 U.S.C. § 3553(f)], the defendant is eligible instead for the range proscribed by the United States Sentencing Guidelines.").  But see United States v. Ahlers, 305 F.3d 54, 59 (1st Cir. 2002)("Thus, section 3553(f) demonstrates

Congress's ability to deploy unambiguous statutory language when it intends to authorize sentencing judges to ignore the limitations imposed by statutory minimum sentences and treat a 'mandatory minimum' case like any other."); United States v. A.B., 529 F.3d 1275, 1284 (10th Cir. 2008)(quoting in dicta the holding in United States v. Ahlers). The Tenth Circuit held in United States v. A.B. that, in the context of cases where U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) apply, a district court has statutory authority to impose a sentence below the statutory minimum only to the extent the considerations under U.S.S.G. § 5K1.1 permit a departure:

> According to A.B., once the government moved for a substantial assistance downward departure, which would have resulted in a below-mandatory minimum sentence, the district court also was obligated to consider granting a variance under § 3553(a) to further decrease the sentence below the otherwise mandatory threshold. This argument is inconsistent with our decision in [United States v.] Campbell, [995 F.2d 173 (10th Cir. 1993)], where we held that only substantial assistance considerations may support a downward departure below a mandatory minimum sentence pursuant to § 3553(e).

529 F.3d at 1281. In dicta, the Tenth Circuit distinguished 18 U.S.C. § 3553(f) to respond to the plaintiff's arguments and relied on a case from the United States Court of Appeals for the First Circuit, which it paraphrased as stating: "In other words, unlike under § 3553(f), upon granting a § 3553(e) downward departure, a district court is not at liberty to treat the case 'like any other,' but rather must focus only on substantial assistance considerations." United States v. A.B., 529 F.3d at 1284 (quoting United States v. Ahlers, 305 F.3d at 59-60). A subsequent Tenth Circuit panel, however, in United States v. Bugarin, felt that the issue, as it related to variances in the context of 18 U.S.C. § 3553(f), required supplemental briefing. See 312 F.App'x at 152 n.6 ("Although we requested supplemental briefing on the issue, we need not decide whether a district court has authority to vary from a within-Guidelines sentence when safety valve relief applies under 18 U.S.C. § 3553(f) because the district court in this case did not vary."). Thus, it is uncertain what the Tenth Circuit would hold when squarely presented with the issue whether, in a case where there is a mandatory minimum and a departure under 18 U.S.C. § 3553(f), a court may vary downward from the advisory guideline range after reducing a sentence below the mandatory minimum under 18 U.S.C. § 3553(f). As a result, it is possible that the Court may have erred in varying in this case after it granted a safety-valve reduction, and it may find in a similar case, if presented with the issue, that such a variance would be error.

It is also worth noting that, in cases where there is no statutory mandatory minimum, courts may still use U.S.S.G. § 2D1.1(b)(16) to depart downward 2 levels if the defendant can satisfy the safety-valve requirements. See U.S.S.G. § 2D1.1(b)(16) ("If the defendant meets the criteria set forth in subdivisions (1) to (5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels."). Application note 21 to U.S.S.G. § 2D1.1(b)(16) contemplates this scenario: "The applicability of subsection (b)(16) shall be determined without regard to whether the defendant was convicted of an offense that subjects the defendant to a mandatory minimum term of imprisonment." U.S.S.G. § 2D1.1 cmt. n.21. Accord United States v. Warnick, 287 F.3d 299, 304 (4th Cir. 2002)("The plain language of § 2D1.1(b)(6),

-24-

**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum, filed March 22, 2012 (Doc. 30), are granted in part and denied in part.  The Court sentences Defendant Erick Gonzalez-Lopez to 15-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Kenneth J. Gonzales
    United States Attorney
Jeremy Pena
Shammara Henderson
    Assistant United States Attorneys
Albuquerque, New Mexico

          _Attorneys for the Plaintiff_

Kari Converse
    Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

          _Attorneys for the Defendant_

---

however, merely requires that a defendant meet the criteria found in § 5C1.2(1)-(5); it does not limit the defendant's eligibility for the two-level downward reduction based upon the offense of conviction or . . . any of the other requirements found in § 5C1.2."); United States v. Osei, 107 F.3d 101, 103-04 (2d Cir. 1997)("Had the Sentencing Commission intended to limit the application of § 2D1.1 to those defendants who are subject to a mandatory minimum sentence, it could easily have done so by providing . . . .").  When there is no statutory mandatory minimum or other statute constraining a court's ability to arrive at an appropriate sentence, the concerns the Tenth Circuit expressed in United States v. A.B. do not apply.  See United States v. A.B., 529 F.3d at 1282 ("This argument is inconsistent with our decision in Campbell, where we held that only substantial assistance considerations may support a downward departure below a mandatory minimum sentence pursuant to § 3553(e).").